**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**MYRA B. HENDRICKS,**

      **Plaintiff,**

vs.                                                                                                                  **Civil No. 04-1222 RLP**

**JO ANNE B. BARNHART,
Commissioner of Social Security,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER**

1.      Plaintiff Myra B. Hendricks, ("Plaintiff" herein) brings this action pursuant to §42 U.S.C. 405(g) seeking judicial review of the decision of Defendant, the Commissioner of Social Security, to deny her applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act.

*I.  Procedural Background*

2.      Plaintiff filed applications for disability income benefits and supplemental security income in October 2001. (Tr. 77, 46, 202). The claims were denied at the first and second levels of administrative review (Tr. 26, 29-34, 205-214), and by an administrative law judge following a hearing. (Tr. 17-21, 220-233). The Appeals Council declined review of the ALJ's determination, making it the Commissioner's final decision pursuant to §42 U.S.C. 405(g).

*II.  Five Step Sequential Evaluation Process.*

3.      An ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. *Williams vs. Bowen*, 844 F.2d 748, 750-52 (10th Cir.1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* at

751 & n. 2. At step one, the claimant must show "that he is not presently engaged in substantial gainful activity;" at step two "that she has a medically severe impairment or combination of impairments;" at step three that the impairment is equivalent to a listed impairment; and at step four, "that the impairment or combination of impairments prevents him from performing his past work." *Id.* at 750-52. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given his age, education and work experience. *See id.* at 751 & n. 2.

### *III.  Standard of Review*.

4.      The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence, and whether she applied the correct legal standards. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir.1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992).  Moreover, "all the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir.1999), and the ALJ must consider all relevant medical evidence in making those findings, *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir.1989). Therefore, "in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.1996).  Although the court does not reweigh the evidence or try the issues *de novo*,

*Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993), it will meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994).

## *IV.  Factual Background*

### Vocational Facts

5.      Plaintiff was born on January 1, 1958.  (Tr. 46).  She dropped out of high school in the 9th grade, but eventually obtained a GED in 1992. (Tr. 74, 223).  She completed vocational training in 2000 (Tr. 74), and has prior relevant work experience as a check processor.[1]

### Plaintiff's Allegations

6.      Plaintiff contends that she has been unable to work since May 1, 2001, due to depression, hypertrophic arthritis and pain. (Tr. 46, 68).  In terms of functional impairments, she asserts that lifting more than 10 pounds,  and  walking, sitting  or standing more than an hour cause pain.  (Tr. 88).  She does not use a cane and can drive.  (Tr. 89).  She also contends that her condition deteriorated during the pendency of her social security claim, to the point that she requires help with self-care activities, doesn't visit or socialize, and doesn't want to be around people. (Tr. 95, 97).

### Medical history

7.      Plaintiff moved to Roswell, New Mexico, from California in 2001.  The first record of medical care in the administrative record is her initial appointment with Shehzad Jinnah, M.D., on August 17,

---

[1] In written materials, Plaintiff indicated that she had worked at two financial institutions  as a "proof operator," for a total of 8 months in 2000.  She described the job as sedentary, with lifting of less than 10 pounds frequently, and requiring continuous use of the hands to grab, grasp, write, type or handle small objects. (Tr. 81-83).  *See also Dictionary of Occupational Titles*, 217.382.010.

2001. He noted that she was obese, had a history of back problems dating to 1993, and that she suffered from osteoporosis and hypothyroidism. Physical examination indicated elevated blood pressure, poor dental hygiene, a slightly enlarged liver and 2+ edema of the ankles. Dr. Jinnah placed her on a diuretic (Maxzide), an anti-depressant (Paxil), thyroid replacement (Levothyroxin) and medication for back pain (Darvocet). (Tr. 108). Plaintiff missed her scheduled appointment the following month. (Tr. 104).

8.    Plaintiff was seen by Deborah Pollak, NP-C in January 2002. She had not filled her prescription for the diuretic, and still had edema of the ankles. Nurse Pollak indicated that she would not refill Plaintiff's prescription for pain medication until her prior medical records were received. Nurse Pollak prescribed Vioxx[2] and a diuretic, counseled Plaintiff on diet and exercise and recommended that she see a counselor. (Tr. 103). Plaintiff subsequently reported that Vioxx was working well, with no adverse side effects. (Tr. 188, 185).

9.    Plaintiff was evaluated by Raiman K. Johnson, Ph.D., as the request of the Disability Determination Services, on April 3, 2002. Dr. Johnson noted Plaintiff's medication regimen[3], took a history and conducted a mental status examination[4]. He diagnosed Mood Disorder due to multiple

---

[2]Vioxx was used in the treatment of arthritis and acute pain. It was voluntarily withdrawn from the market by its manufacturer on September 30, 2004. www.vioxx.com/rofecoxib/vioxx/consumer/ index.jsp

[3]Plaintiff stated that she was taking Paxil, anti-depressant- 40 mg. daily, Vioxx 12.5 mg., and Levoxyl, a thyroid replacement. (Tr. 111). She was not taking the prescribed diuretic.

[4]Plaintiff was oriented x 3, and exhibited depressed mood and labile affect. She appeared to be of average intelligence, was willing to self disclose her physical problems and maintained adequate eye contact. While she demonstrated marginal psychological sophistication, her socialization skills were age appropriate. She had no symptoms suggestive of overt psychoses or neuroses, denied delusions, illusions hallucinations or perceptual disturbances in the past. Her thought processes were intact, and she had no evidence of loosening of associations. She cooperated during the exam. Her fund of information was within normal limited, but by self report her executive functions were mildly impaired. She denied long and

medical difficulties with Depressive Features, Generalized Anxiety Disorder and assigned a GAF score of 50.[5]  Dr. Johnson also prepared and submitted a Psychiatric-Psychological Source Statement of Ability to do Work-Related Activities (Mental-MSS) (Tr. 114-115).  In this report he indicated that Plaintiff had the following abilities:

>  Understanding and remembering
>  very short and simple instructions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . Not limited
>
>  Ability to carry out instructions, attend
>  and concentrate, work without supervision . . . . . . . . . . . . . . . . . . . Mildly limited
>
>  Ability to interact with the public, with
>  coworkers and with supervisors  . . . . . . . . . . . . . . . . . . . . . . . . . . . Mildly limited
>
>  Ability to adapt to changes in the workplace,
>  be award of normal hazards and react appropriately
>  and to use public transportation or travel to
>  unfamiliar places  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Mildly limited

The definitions portion of the form on which Dr. Johnson made this evaluation defines mildly limited as "the effects of the mental disorder do not significantly limit the individual from consistently and usefully performing the activity."  (Tr. 114)

10. On July 17, 2002, Nurse Pollak submitted a Medical Source Statement of Ability To Do Work-Related Activities.  In that form, she stated that she had not limited Plaintiff's ability to work in any way, and that to her knowledge, Plaintiff had no exertional limitations.  (Tr. 142-143).

---

short term memory problems, though did state that sometimes she had problems remembering.  Dr. Johnson felt that her judgment and insight were limited, her ability to comprehend abstract concepts marginal and her deductive reasoning capacity was slowed.  (Tr. 112).

[5]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Diagnostic and Statistical Manual of Mental Disorders Fourth Edition*, ("DSM-IV"), 32 (American Psychiatric Association 1994).  A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." *Id.*

11.     The following month Plaintiff was seen by Nurse Pollak complaining of intermittent, sharp mouth pain. She stated that she was scheduled to have her teeth removed and to be fitted for dentures. She also requested blood pressure medication because she wanted "to start taking care of it." Nurse Pollak noted that Plaintiff continued to have 2+ pitting edema. With regard to her mental status, she described Plaintiff as having bright affect, trying to stay cheerful, with excellent eye contact. She advised a low salt diet, exercise and weight loss, continued her on Synthroid, Paxil and Vioxx, and prescribed medication to lower blood pressure. (Tr. 183).

12.     Plaintiff was evaluated by Peter Morris, an intake therapist at Counseling Associates Inc. on August 28, 2002. The only abnormalities noted on mental status examination were hesitant speech, depressed mood and preoccupation with financial concerns. (Tr. 129). Based on the history taken[6], Mr. Morris felt Plaintiff suffered from Major Depressive Disorder, Single Episode, mild, and Generalized anxiety disorder, and assigned a GAF of 45.[7] (Tr. 118-121, 130). Thereafter, Plaintiff apparently started counseling sessions with Dorothy Wurth, a licensed social worker. (Tr. 124-125).

13.     Plaintiff returned to Nurse Pollak on September 14, 2002, complaining of increased low back and knee pain helped by range of motion exercises. She also indicated that she had not taken Vioxx that day. On physical examination she had edema in the legs, full range of back motion with tenderness to palpation at L4-5 and S1-2, bright affect, some difficulty using her new dentures and

---

[6]Plaintiff told Mr. Morris that she had extreme medical problems, had never work worked at a full time job more than two months, was currently unemployed and on welfare but didn't feel she needed employment counseling, had been convicted of shoplifting/vandalism in the past but had no current legal problems, was divorced, spend most of her free time with her family and was not satisfied with that arrangement, had been abused during her lifetime but did not want counseling or treatment for family or social problems, had been treated twice in the past for psychological problems, that she currently and in the past suffered depression and serious anxiety or tension.

[7]See footnote 5, *supra*.

good eye contact. Nurse Pollak advised Plaintiff to continue range of motion exercises, use moist heat, take Vioxx, and other medications, decrease salt intake, increase exercise and potassium in her diet.

14. Plaintiff was evaluated by Glen Jacob, M.D., on February 5, 2003, after a blood test indicated that she had high levels of blood glucose, cholesterol and triglicerides (Tr. 180-181). Plaintiff told Dr. Jacob that she could not afford the previously prescribed blood pressure medication, and had discontinued taking it the month before. She complained of a 20 year history of depression, but stated that Paxil helped "a lot " with depression and that Vioxx helped her low back pain. On physical examination, Plaintiff had trace edema, back tenderness, negative straight leg raising test and equal deep tendon reflexes. Dr. Jacob prescribed a different blood pressure medication, stated that her depression was stable on medication and advised her on diet. (Tr. 180).

15. On May 19, 2003, Dorothy Wurth wrote to the Income Support Division on Plaintiff's behalf. Her letter states that Plaintiff:

> . . .has periods of dissociation during which she does things that are contrary to her normal personality and could have legal ramifications. These periods of dissociation are triggered by stress and anxiety. At this point, she is handling her Generalized Anxiety Disorder by staying at home when she is under stress. She still has periods of dissociation, but it isn't getting her into trouble. My concern is that if she returns to work in a stressful situation. She will dissociate and do something that will not only cause her to lose her job but get her in trouble legally. At this point I'm unable to make a prognosis as to when or if Ms. Hendricks will be able to overcome this problem.

(Tr. 176).

16. Neither of the two clinical notes prepared by Ms. Wurth mention periods of dissociation. A *Counseling and Therapy Service Plan* initiated on September 16, 2002, discusses reducing anxiety through regular appointments, journaling, relaxation techniques, increased self esteem and

stabilization of mood swings. A S*ervice Review Plan* dated December 16, 2002, discusses relaxation practices, self-esteem and self-assertion. (Tr. 125). A "*Mental Impairment Questionnaire*" prepared by Ms. Wurth was submitted at the Administrative Hearing on January 20, 2004. In it Ms. Wurth states that she had seen Plaintiff weekly for sixteen months. She diagnosed Major Depressive Disorder, Post Traumatic Stress Disorder, Dissociative Identity Disorder and Borderline intellectual functioning based on a constellation of listed symptoms and behaviors[8], and indicated that mental impairments would functionally preclude the ability to work. (Tr. 197-200).

## *V. The ALJ's Decision*

17.     The ALJ determined that Plaintiff's exertional impairments did not limit her ability to perform medium work[9] and that non-exertional impairments did not significantly erode that work capacity. In terms mental impairments, the ALJ found that Ms. Wurth was not a qualified medical provider as that term is defined in the Social Security Act, and that her opinions were accordingly considered as ordinary evidence, not requiring special weight. The ALJ discussed and gave reasons for discounting the opinions of Ms. Wurth. He relied instead on the opinions of Dr. Johnson and non-examining agency physicians in assessing Plaintiff's mental residual functional capacity. The ALJ also discussed reasons for discounting Plaintiff's credibility. The ALJ determined that Plaintiff retained the residual

---

[8] Poor memory, sleep disturbance, emotional stability, time or place disorientation, social withdrawal or isolation, recurrent panic attacks, feelings of guilt/worthlessness, difficulty thinking or concentrating, decreased energy, intrusive recollections of a traumatic experience, persistent irrational fears, generalized persistent anxiety, inappropriate language and actions, including shoplifting, during episodes of anxiety, consistent elevated scores on anxiety index testing, log of activities indicating hours of lost awareness after stress, stress levels increased by pain, pain increased by activities during periods of dissociation, medication side effects from Paxil, including dizziness, drowsiness and fatigue. (Tr. 193-197).

[9] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, she also can do sedentary and light work. See §20 C.F.R. 404.1567(c) (2005).

functional capacity to perform her past relevant work as a check processor, finding her not disabled at step four of the sequential evaluation process. (Tr. 17-21).

## *VI. Issues Raised on Appeal.*

18.     The following issues are raised on appeal:

     A.     Whether the ALJ failed to apply correct legal principles in assessing Plaintiff's credibility.

     B.     Whether the ALJ failed to apply correct legal principles in assessing Plaintiff's mental impairment.

     C.     Whether the ALJ's decision was supported by substantial evidence.

     D.     Whether the ALJ erred by failing to consider the combination of Plaintiff's impairments.

     E.     Whether the ALJ erred by failing to utilize a vocational expert.

     F.     Whether the ALJ erred by failing to perform a retrospective analysis of Plaintiff's deterioration after the date she was last insured.

## *VII.   Discussion*.

### The ALJ did not err in assessing Plaintiff's credibility

19.     The criteria for review of the Commissioner's credibility findings are well known. "Credibility is the province of the ALJ." *Hamilton v. Sec'y of Health & Human Serv's*, 961 F.2d 1495, 1499 (10th Cir. 1992). "Findings as to credibility must be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. *Id., quoting Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted). The ALJ must explain why specific evidence relevant to each factor supports a conclusion that a claimant's subjective complaints are not credible.

9

*See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *but see Qualls v. Apfel*, 206 F.2d 1368, 1372 (10th Cir. 2000) (*Kepler* does not require formalistic factor-by-factor recitation of evidence.) If the ALJ's credibility determination is supported by substantial evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" *see Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996) (q*uoting Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971), it will not be reversed. *Kepler*, 68 F.3d at 391.

20. In assessing Plaintiff's credibility, the ALJ noted that her claims of physical impairment (Compare Tr. 88 with Tr. 142-143) and memory difficulties (Compare Tr. 225 with Tr. 112 and Tr. 129) were contradicted by the medical record. He discussed Plaintiff's testimony that work stress caused or would cause her to experience a dissociative disorder. He found that this testimony was not consistent with her testimony that she had left several jobs to "better" herself (Tr. 223), and the fact that she had been employed previously, and never claimed work stress in those jobs had caused her to experience a dissociative episode[10]. (Tr. 20, 223).

21. I find that the ALJ's credibility determination is supported by substantial evidence and the application of correct legal principles.

<u>The ALJ did not err in assessing Plaintiff's mental impairment.</u>

22. Plaintiff's argument that the ALJ failed to apply correct legal principles in the assessment of her mental impairment is premised on the assumption that the opinions of her counselor, whom he misidentifies as a treating physician, are entitled to controlling weight. They are not. Medical opinions from "physicians and psychologists or other acceptable medical sources that reflect

---

[10] Plaintiff testified that she had been laid off one job at a bank, and that she was fired from another because of a prior criminal conviction. (Tr. 223, 226).

judgments about the nature and severity" of a claimant's impairment generally will be given more weight if they are from treating sources rather than consultative examinations. §20 C.F.R. 404.1527 and 416.927 (1999). However, social workers are not included in the list of "acceptable medical sources." §20 C.F.R. 404.1513(a) and August 26, 2005 416.913(a) (1999). *Metivier v. Barnhart*, 282 F.Supp.2d 1220, 1226 (D. Kan. 2003). Further, the ALJ discussed Ms. Wurth's opinions, and stated legitimate reasons for discounting them.[11]

23. The ALJ relied primarily on the evaluation of Dr. Raiman Johnson in assessing Plaintiff's mental impairment. That evaluation provides substantial evidence to support the ALJ's determination that Plaintiff's mental impairment caused no more than minimal impact on her capacities for work related functioning.

<u>The ALJ did not err in considering the combination of Plaintiff's impairments.</u>

24. Plaintiff's argument that the ALJ failed to consider the combination impairments, is in reality, an claim that substantial evidence does not support the ALJ's decision. Plaintiff cites to her past medical and psychological history, asserts that no physician has determined her ability to sit, stand or carry, and that her obesity would cause problems in stooping, kneeling, etc.

25. Plaintiff's argument is specious. The ALJ specifically noted Plaintiff's allegations mental and physical impairment: Chronic back pain, obesity, edema, chronic anxiety, depression and dissociative disorder. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir.1988). (finding that, where the

---

[11]The ALJ stated that there was no evidence that Ms. Wurth had any specialized training or education in diagnosing and treating mental illness, that her opinion that work stress may bring on dissociative episodes was speculative, equivocal and not supported by the evidence, and that Ms. Wurth's opinion was inconsistent with the opinion of Dr. Johnson who examined Plaintiff and with the nonexamining medical consultant. (Tr. 19-20). This court also notes that Ms. Wurth's opinions are not supported by the only two contemporaneous medical records she prepared.

decision addressed the claimant's various impairments, there was "nothing to suggest they were not properly considered" in combination). The ALJ correctly noted that no treating doctor identified any functional difficulties experienced by Plaintiff due to her obesity or ankle edema, and that her complaints of chronic back pain had not been confirmed by any diagnostic testing. He further noted that no doctors had recommended any restrictions on her activities. (Tr. 19). The record reflects that Plaintiff's physicians consistently recommended exercise, and at least one care provider, nurse practitioner Pollak, stated that Plaintiff had no exertional or postural limitations. (Tr. 142-143). The ALJ also thoroughly discussed Plaintiff's mental impairments. See ¶¶ 9, 22, 23, *supra.*, and Tr. 18-20)

26.     I find no merit in Plaintiff's argument that the ALJ failed to consider her impairments in combination.

The ALJ was not required to obtain testimony from a Vocational Expert,
<u>and made the findings required at step four of the sequential evaluation process.</u>

27.     Plaintiff argues that the ALJ erred by failing to call a vocational expert. This case was decided at step four of the sequential evaluation process. At step four, the ALJ is required by Social Security Ruling 82-62[12] to make findings of fact regarding (1) the claimant's residual functional capacity (RFC); (2) the physical and mental demands of prior work; and (3) the ability of the claimant to return to past relevant work given her RFC. *Henrie v. U.S. Dep't of Health & Human Servs.,* 13 F.3d 359, 361 (10th Cir.1993). The ALJ must make specific findings at each of these three phases, examining both the exertional and nonexertional demands of past relevant work. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996). In reaching these findings, the ALJ is not required to utilize the services

---

[12] Social Security Rulings are entitled to deference "unless 'they are plainly erroneous or inconsistent with the [Social Security] Act.' " *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir.1993), q*uoting Walker v. Sec'y of Health & Human Servs.,* 3 F.2d 1257, 1260 (10th Cir.1991).

of a vocational expert. *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 n. 2 (11th Cir.1990) (no need to obtain vocational expert testimony where ALJ concluded plaintiff was capable of performing past relevant work). The ALJ made the specific findings required at step four of the sequential evaluation process, and those findings are supported by substantial evidence.[13]

The ALJ analyzed the evidence of record.

28.     Finally, Plaintiff contends that the ALJ should have performed a retrospective analysis of her medical deterioration after September 20, 2001, the date she was last insured for disability benefits. Plaintiff's argument is without merit. All of the medical treatment of record in this case, with the exception of Dr. Jinnah's initial examination of Plaintiff, occurred after September 20, 2001. The ALJ considered and discussed the medical evidence postdating the date Plaintiff was last insured.

## *VIII.   Conclusion*.

29.     For these reasons, Plaintiff's Motion to Reverse, or in the Alternative to Remand is denied, and the decision of the Commissioner, denying Plaintiff's Application for Disability Income benefits and Supplemental Security Income is affirmed.

/s/ Richard L. Puglisi<br>
Richard L. Puglisi<br>
United States Magistrate Judge<br>
(sitting by designation)

---

[13] The ALJ found that Plaintiff was capable of medium, unskilled, work activities, that nonexertional factors had not significantly eroded that work capacity, that her prior work was sedentary in nature, that work stresses had not impacted her ability to perform that work and that she had not met her burden of demonstrating that she has been unable to perform any category of her past relevant work. For recitation of the substantial evidence supporting these findings, see ¶¶ 9-11, 14 and footnote 1, *supra*.